UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THEODORE BARBUTO,

                     Plaintiff,

      -v-                                    5:23-CV-245 (AJB/ML)

SYRACUSE UNIVERSITY and
MARY PAT GRZYMALA, individually
and in her official capacity,

                     Defendants.
_____

**Hon. Anthony Brindisi, U.S. District Judge:**

## DECISION and ORDER

### I.     INTRODUCTION

On February 23, 2023, plaintiff Theodore Barbuto ("plaintiff") filed this action pursuant to the Family and Medical Leave Act (the "FMLA"), Section 504 of the Rehabilitation Act, Title III of the Americans with Disabilities Act (the "ADA"), and related state law, against defendants Syracuse University (the "University") and Mary Pat Grzymala, in her individual and official capacities ("Grzymala") (collectively "defendants"). Dkt. No. 1. Plaintiff, a custodian at the University, alleges that defendants interfered with his ability to take intermittent leave under the FMLA to care for his husband and discriminated against him for utilizing approved FMLA leave by restricting his access to fringe benefits. *Id.*

On April 26, 2023, defendants moved to dismiss the complaint in its entirety. Dkt. No. 8-1. United States District Judge David N. Hurd dismissed plaintiff's claim under Section 504 of the Rehabilitation Act, but denied defendants' motion in all other respects. Dkt. No. 16. Following a period of discovery, defendants moved under Federal Rule of Civil Procedure ("Rule") 56 for summary judgment on plaintiff's remaining claims. Dkt. No. 49. Once

defendants' motion was fully briefed, *see* Dkt. Nos. 54, 57, the matter was reassigned to this Court for all further proceedings.  Defendants' motion will be considered on the basis of the submissions without oral argument.

## II.    BACKGROUND

Pursuant to Local Rule 56.1, the following facts are drawn from the parties' statements of material facts and the attached exhibits and are undisputed unless otherwise noted.

The University is a private university and education corporation located in Syracuse, New York.  Dkt. No. 49-25 ("Defs.' SMF") ¶ 1.  Grzymala was an employee at the University for 25 years before retiring on June 30, 2025.  *Id.* ¶ 2.  From 2015 until her retirement, Grzymala served as the Senior Associate Director of Facilities Services.  *Id.*  While serving in that role, seven departments reported to Grzymala, including the custodial/housekeeping department.  *Id.* ¶ 3.  Plaintiff was hired by the University in August or September 2016 in its food services department as a "floater" in its dining center.  *Id.* ¶ 4.  Plaintiff is a gay man, and he is married to a man.  *Id.* ¶ 5.

Throughout 2018, plaintiff held various positions within the food services department. Defs.' SMF ¶ 6.  Plaintiff was promoted to the position of custodian, which is part of the University's facilities services department, in September 2019.  *Id.* ¶ 7.  From March 2021 to early April 2022, Plaintiff's supervisor was Christopher Boiselle ("Boiselle"), and his manager was Annette Statum ("Statum").  *Id.* ¶ 8.  Statum reported to Grzymala.  *Id.*  During that time, plaintiff worked Monday through Friday from 5:00 a.m. to 1:30 p.m.  *Id.* ¶ 9.  Plaintiff's work schedule was dictated by the applicable collective bargaining agreement, which also determined union employees' pay, benefits, and terms and conditions of employment.  *Id.* ¶ 10.  Plaintiff's

husband also worked for the University. *Id.* ¶ 21. He worked the same shift as plaintiff (5:00 a.m. to 1:30 p.m.). *Id.*

On March 24, 2021, plaintiff submitted paperwork to the University's Leave Administrator requesting intermittent leave, pursuant to the FMLA. Defs.' SMF ¶ 11. Plaintiff needed intermittent leave so that he could care for his husband, who experienced flare ups of anxiety and depression. *Id.* ¶ 13. Plaintiff's assistance to his husband included: ensuring that he took his medications, assisting him with getting out of bed and personal hygiene, driving him to medical appointments, picking up medications, providing emotional support, completing household chores, and monitoring the severity of his husband's episodes. *Id.* ¶ 14. Plaintiff's husband's medical provider estimated that plaintiff would need to care for his husband one to three times per week with episodes lasting approximately eight hours. *Id.* ¶ 15. According to plaintiff, his husband's episodes were unpredictable. Dkt. No. 54-9 ("Pl.'s Resp. SMF")[1] ¶ 15.

On March 25, 2021, the University's leave administrator, Casey Green ("Green"), approved plaintiff's request for intermittent leave for one to three days a week, up to eight hours per day, "for a one-year period to 'care for [his] spouse's serious health condition.'" Defs.' SMF ¶¶ 17–18 (quoting Dkt. No. 49-1 ("Bottari Decl."), Ex. B, Dkt. No. 49-3 at 1). Green instructed Boiselle that plaintiff's intermittent leave was to be recorded as "FMLA Sick" or "FMLA Reduced Sick." Defs.' SMF ¶ 19. On days when plaintiff's husband experienced an episode of anxiety and depression, plaintiff would inform Boiselle—ordinarily by text message—that he

---

[1] Although plaintiff's responses to defendants' statement of material facts and plaintiff's statement of additional material facts are contained in the same document, the Court cites plaintiff's responses to Miller's statement of material facts as "Pl.'s Resp. SMF" and plaintiff's statement of additional material facts as "Pl.'s Add'l SMF" to avoid any confusion.

would be utilizing FMLA leave for the duration of his shift. *Id.* ¶ 22. University employees receive 67% of their pay on days when they utilize FMLA leave. *Id.* ¶ 12.

In December 2021, plaintiff requested the University's "remitted tuition benefit" (the "RTB") for use in the 2022 spring semester. Defs.' SMF ¶ 23. For benefits-eligible employees, the RTB "offers a 'full tuition waiver for up to twelve credit hours each academic year,' with employees able to take up to six credit hours per semester or summer session." *Id.* ¶ 24 (quoting Bottari Decl. ¶ 11); *see also* Bottari Decl., Ex. E, Dkt. No. 49-6 ("RTB policy") at 1–2. The University approved plaintiff's request to use the RTB during the 2022 spring semester. Defs.' SMF ¶ 26. In December 2021, plaintiff signed up to take a pre-calculus class that would begin in January 2022. *Id.* ¶ 27. At some point, plaintiff also registered for a yoga class, which was scheduled to begin on March 22, 2022. *Id.*

Plaintiff's pre-calculus class was scheduled to meet four times per week during plaintiff's work shift: from 9:30 a.m. to 10:25 a.m. on Mondays, Wednesdays, and Fridays, and from 8:00 a.m. to 9:20 a.m. on Thursdays. Defs.' SMF ¶¶ 28, 30. On December 20, 2021, plaintiff met with one of his supervisors and Grzymala to discuss possible resolutions to his scheduling conflict. Defs.' SMF ¶¶ 28, 29. To account for the minutes that plaintiff would need to attend (as well as travel to and from) his pre-calculus class on Mondays, Wednesdays, and Fridays, Grzymala extended plaintiff's shift by five minutes, to 1:35 p.m., and allowed plaintiff to use his two 15 minute breaks and his 30-minute lunch break towards class time. *Id.* ¶ 31. To account for the time plaintiff would need to attend class on Thursdays, Grzymala allowed plaintiff to use his two 15-minute breaks, his 30-minute lunch break, and 30 minutes of vacation time towards class time. *Id.* Grzymala warned plaintiff that he was not permitted to attend class on days when

he utilized FMLA leave.  *Id.* ¶ 32.  Aside from pre-calculus, Grzymala was not aware that plaintiff had registered to take any other classes during the 2022 spring semester.  *Id.* ¶ 36.

After the meeting, Grzymala e-mailed plaintiff and his supervisors to confirm the agreed-upon arrangement.  Defs.' SMF ¶ 33.  Grzymala's e-mail reiterated that: "[Plaintiff] will not be attending classes on any day [plaintiff] call[s] in with an unscheduled absence (sick, FMLA, etc[.])."  *Id.* ¶ 34 (quoting Dkt. No. 49-15 ("Grzymala Decl."), Ex. A, Dkt. No. 49-16 at 2).

It is this restriction on class attendance (the "Restriction") that forms the basis of plaintiff's claim.  *See generally*, Dkt. No. 1 ("Compl.").  When Grzymala sent the e-mail, she was aware that plaintiff was granted intermittent FMLA leave and also that plaintiff was gay.  Pl.'s Add'l SMF ¶ 6; *see also* Dkt. No. 49-17 ("Melvin Decl."), Ex. B, Dkt. No. 49-19 ("Grzymala Dep.") at 29–33.  Although two or three custodians used the RTB during Grzymala's tenure as Senior Associate Director of Facilities Services, Grzymala only imposed the Restriction on plaintiff.  Pl.'s Add'l SMF ¶ 1.  Grzymala testified that none of the other custodians had requested to use the RTB to attend classes during their work schedules.  Dkt. No. 57-3 ¶ 1.

In January 2022, plaintiff began attending his pre-calculus class.  Defs.' SMF ¶ 38.  On February 7, 2022, plaintiff worked until approximately 8:30 a.m. before taking FMLA leave for the remainder of his shift to care for his husband.  *Id.* ¶ 42.  Plaintiff did not attend his pre-calculus class at 9:30 a.m. that day.  *Id.* ¶ 43.  Plaintiff agreed that he would have missed class that day regardless of the Restriction, because he was at home caring for his husband at the time when class was held.  *Id.* ¶ 43 (citing Melvin Decl., Ex. A, Dkt. No. 49-18 ("Pl.'s Dep.") at 47).

On March 10, 2022, plaintiff took FMLA leave for his entire shift to care for his husband.  Defs.' SMF ¶ 44.  He did not attend his pre-calculus class that morning.  *Id.*  Though plaintiff

admits that he took FMLA leave during his entire shift on March 10, 2022, he disputes defendants' conclusion that—because he cared for his husband from 5:00 a.m. to 1:30 p.m. on March 10, 2022—he would have missed his pre-calculus class that day from 8:00 a.m. to 9:20 a.m. regardless of the Restriction. Pl.'s Resp. SMF ¶ 44.

On March 14, 2022, Plaintiff submitted a request for another year of intermittent FMLA leave, and Green approved his request two days later. Defs.' SMF ¶¶ 74–75.

Plaintiff's yoga class was scheduled to begin on March 22, 2022. Defs.' SMF ¶ 39. The class was scheduled to meet from 2:00 p.m. to 3:20 p.m. on Tuesdays and Thursdays. *Id.* ¶ 40. Plaintiff missed his yoga class on March 22, 2022 for reasons unrelated to the Restriction. *Id.* ¶ 49. On March 23, 2022, plaintiff used FMLA leave for his entire shift to care for his husband. Defs.' SMF ¶ 45. Plaintiff did not attend his pre-calculus class that day. *Id.*

On March 29, 2022, plaintiff took FMLA leave to care for his husband during his shift. Defs.' SMF ¶ 51. He did not attend his yoga class that afternoon. *Id.* ¶ 50. Plaintiff testified that he missed his yoga class that day because of the Restriction. *Id.* Plaintiff's yoga instructor allowed students two unexcused absences during the semester, and plaintiff's absence on March 29th was ultimately excused. *Id.* ¶ 52.

Throughout the 2022 spring semester, plaintiff claims to have missed tutoring sessions on January 27th, February 1st, February 8th, March 1st, March 10th, March 22nd, and March 29th due to the Restriction. Defs.' SMF ¶ 56. Plaintiff testified that he did not attend any tutoring sessions during the 2022 spring semester, even on days when he did not utilize FMLA leave, *see* Def.'s SMF ¶ 57, but he maintains that the Restriction prevented him from taking advantage of tutoring sessions on days when he did take FMLA leave, Pl.'s Resp. ¶ 57. Plaintiff also testified

that he sometimes "begged" his husband to handle medical episodes himself so that plaintiff could attend work and classes.  Pl.'s Add'l SMF ¶ 10 (citing Pl.'s Dep. at 195).

On March 31, 2022, plaintiff met with Cathy Bottari ("Bottari"), the Associate Director of Labor Relations in the University's Office of Human Resources.  Defs.' SMF ¶¶ 58–60.  Ten days prior, plaintiff had sent Bottari an e-mail requesting clarification as to the Restriction.  *Id.* ¶ 58.  During the meeting, plaintiff complained about the Restriction and, in response, Bottari advised plaintiff that she was rescinding the Restriction, effective that day.  *Id.* ¶¶ 61–62.  After the meeting, Bottari advised Grzymala that she could not impose a restriction on plaintiff's class attendance on days when plaintiff used FMLA leave.  Pl.'s Add'l SMF ¶ 7.  Bottari sent plaintiff an e-mail that confirmed her removal of the Restriction on April 4, 2022.  Defs.' SMF ¶ 63.

At the end of the 2022 spring semester, plaintiff received final grades of "A" in his pre-calculus and yoga classes.  Defs.' SMF ¶¶ 68–69.  Between January 6, 2022, and April 13, 2022, plaintiff used 123.2 hours of intermittent FMLA leave to care for his husband.  *Id.* ¶ 66.  For the one-year period between March 24, 2021, and March 24, 2022, Plaintiff used 461.5 hours of FMLA Sick and Reduced Sick leave.  *Id.* ¶ 20.  The University never denied any of plaintiff's requests for FMLA leave.  *Id.* ¶ 67.  On June 16, 2022, plaintiff was promoted to "laborer" and received a pay increase.  *Id.* ¶ 78.

During the 2022 fall semester, plaintiff used the RTB to take two courses.  Defs.' SMF ¶ 70.  Plaintiff continued using the RTB to take courses in subsequent semesters and received credit for serving as a teaching assistant during the 2025 spring semester.  *Id.* ¶ 71.  Plaintiff testified that he did not use the RTB to take courses during the 2025 fall semester because he "lost motivation."  *Id.* ¶ 72 (citing Pl.'s Dep. at 45).  The Restriction has not been re-implemented since its recission on either March 31 or April 4, 2022.  Defs.' SMF ¶ 73.

### III.    LEGAL STANDARD

The entry of summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a material fact is considered "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.  In conducting this analysis, the court must view the facts and draw all reasonable inferences in the light most favorable to the non-movant.  *Id*. at 255.  Even so, there is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"'The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists,' but 'when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to' an absence of evidence 'on an essential element of the nonmovant's claim.'" *Bustamante v. KIND, LLC*, 100 F.4th 419, 432 (2d Cir. 2024) (quoting *Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 108 (2d Cir. 2023)).

### IV.    DISCUSSION

Plaintiff asserts FMLA interference and retaliation claims, ADA associational disability discrimination claims, and related state law claims against the University and Grzymala. Compl.; *see also* Dkt. No. 16 (dismissing plaintiff's Rehabilitation Act claim).  Defendants argue that they are entitled to summary judgment on all of plaintiff's claims.  Dkt. No. 49-26 ("Defs.' Mem.")[2].  Plaintiff disagrees.  Dkt. No. 54-8 ("Pl.'s Opp.").

---

[2] Citations to the parties' briefing refer to the CM/ECF-generated pagination.

### A. FMLA

"The [FMLA] entitles eligible employees to take up to 12 work weeks of unpaid leave annually for any of several reasons, including the onset of a 'serious health condition' in an employee's spouse, child, or parent." *Nev. Dep't Human Res. v. Hibbs*, 538 U.S. 721, 724 (2003). FMLA leave may be taken on an intermittent basis when medically necessary. 29 U.S.C. § 2612(b)(1).

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). The FMLA creates a private right of action to enforce this prohibition, *see* 29 U.S.C. § 2617, and "FMLA claims come in at least two varieties: interference and retaliation." *Haran v. Orange Bus. Servs., Inc.*, 160 F.4th 51, 56 (2d Cir. 2025) (internal quotation omitted).

Plaintiff asserts interference and retaliation claims based on defendants' imposition of the Restriction. In plaintiff's view: (1) the Restriction interfered with his FMLA rights by restricting his ability to utilize his educational benefits on days that he used FMLA leave; and (2) defendants imposed the Restriction against him in retaliation for his exercise of FMLA rights.[3] Pl.'s Opp. at 7.

### 1. Prejudice

Defendants argue that, even if the Restriction violated plaintiff's rights under the FMLA, they are entitled to summary judgment on both of plaintiff's FMLA claims because plaintiff has

---

[3] Plaintiff also suggests that Grzymala retaliated against him, in part, due to his sexual orientation. *See* Pl.'s Opp. at 6–7, 14–15, 29, 32. The FMLA is not a proper vehicle for this claim. While Title VII prohibits employers from taking adverse action against an employee based on a protected characteristic, *Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644 (2020) (holding that "[a]n employer who fires an individual merely for being gay . . . defies the law"), plaintiff brought his retaliation claim under the FMLA, and the FMLA's prohibitions are more limited in scope. The FMLA prohibits only: (1) interference with an employee's exercise or attempted exercise of FMLA rights; (2) retaliation for the exercise or attempted exercise of FMLA rights; and (3) discrimination against an employee based on their opposition to a practice that violates the FMLA. *See* 29 U.S.C. § 1615(a).

failed to offer evidence from which reasonable jury could conclude that he suffered actual prejudice or a compensable loss due to the Restriction. Defs.' Mem. at 28–32. Plaintiff maintains that a reasonable jury could conclude that he was prejudiced by the Restriction. Pl.'s Opp. at 19–23.

"To prevail under the cause of action set out in § 2617, an employee must prove, as a threshold matter, that the employer violated § 2615 by interfering with, restraining, or denying his or her exercise of FMLA rights." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). "Even then, § 2617 provides no relief unless the employee has been prejudiced by the violation." *Id.*; *see also Roberts v. Health Ass'n*, 308 F. App'x 568, 569 (2d Cir. 2009) (summary order) ("To bring a successful action under the FMLA, an employee must show (1) that the employer interfered with, restrained, or denied the rights protected by the FMLA, and (2) that the employee has been prejudiced by the violation."). An employee bears "the burden of proving [a] real impairment of their rights and resulting prejudice." *Roberts*, 308 F. App'x at 90.

Plaintiff cites a slew of examples that purportedly illustrate the Restriction's negative impact. *See* Pl.'s Opp. at 14–17 (citing prospective interference with course enrollment, impact on leave usage, ongoing coercive effect and feeling of constant pressure, absence from the March 29, 2022, yoga class, loss of educational benefits and experiences, and stigmatization).

But the fact that plaintiff was negatively affected by the Restriction is not dispositive, because the FMLA's remedial mechanism only extends to certain pecuniary harms. As the Supreme Court has explained, "the cause of action under the FMLA is a restricted one: The damages recoverable are strictly defined and measured by actual monetary losses." *Nev. Dep't of Human Res.*, 538 U.S. at 739–40. Consequently, an employee may only recover: (1) "any wages, salary, employment benefits, or other compensation denied or lost to such employee by

reason of the violation"; or (2) "in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care."  29 U.S.C. § 2617.[4]

Defendants maintain that plaintiff has failed to adduce sufficient evidence from which a reasonable factfinder could conclude that he suffered a compensable loss under the FMLA. Defs.' Mem. at 28–32.  Plaintiff disagrees.  Pl.'s Opp. at 14–17.

"To determine whether damages and equitable relief are appropriate under the FMLA, the judge or jury must ask what steps the employee would have taken had circumstances been different . . . "  *Ragsdale*, 535 U.S. at 91.

According to plaintiff, had the Restriction never been imposed, he would "be just as motivated as [he] ever was," "[he]'d probably be finished with [his] degree, and [he]'d probably have a better job by now."  Pl.'s Dep. at 53; *see also* Pl.'s Opp. at 13, 19, 32 (claiming ongoing psychological harm even after the Restriction's recission).  Defendants argue that this contention is unsupported by the record and, thus, cannot support a claim for lost compensation under the FMLA.  Defs.' Mem. at 31 n.4.

Defendants are correct.  Plaintiff concedes that he was promoted to a higher-paying position on June 16, 2022, *see* Pl.'s Resp. SMF ¶ 78, and the undisputed evidence demonstrates

---

[4] Consistent with this approach, courts have consistently rejected attempts to recover damages outside of the statutorily prescribed categories.  *Brandt v. City of Cedar Falls*, 37 F.4th 470, 479 (8th Cir. 2022) (holding nominal damages unavailable in FMLA action); *Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1277–78 (10th Cir. 2001) (same); *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1007–08 (6th Cir. 2005) (holding that plaintiff could not recover emotional distress damages under FMLA); *Jackson v. City of Hot Springs*, 751 F.3d 855, 865 (8th Cir. 2014) (same); *Bento v. City of Milford*, 213 F. Supp. 3d 346, 366 n.2 (D. Conn. 2016) (same); *Trahanas v. Nw. Univ.*, 64 F.4th 842, 858 (7th Cir. 2023) (holding that punitive damages are unavailable under § 2617); *Cooper v. N.Y. State Nurses Ass'n*, 847 F. Supp. 2d 437, 452 (E.D.N.Y. 2012) (same); *see also Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 963 (6th Cir. 2013) (holding that "[i]t is apparent from the plain language of the FMLA remedial provisions that Congress intended to exclude other remedies.").

that plaintiff continued to take courses for three years following the Restriction's recission, *id.* ¶¶ 70–71; *see also* Melvin Decl., Ex. D, Dkt. No. 49-21 (reflecting that plaintiff took courses at the university from the 2022 spring semester through the 2025 spring semester).  Aside from plaintiff's vague and speculative testimony that he could have a "better job by now" if it were not for the Restriction, he has identified no evidence from which a reasonable jury could conclude that plaintiff lost compensation "by reason of" the Restriction.  Accordingly, plaintiff's FMLA claims fail to the extent they seek lost compensation.  *See Ragsdale*, 535 U.S. at 91 ("The employer is liable only for compensation and benefits lost 'by reason of the violation.'" (quoting 29 U.S.C. § 2617(a)(1)(A)(i)(I)).

Next, plaintiff claims that the Restriction deprived him of FMLA benefits because there were days when he would have taken FMLA leave to care for his husband, but did not, because he wanted to be able to attend class.  Pl.'s Opp. at 20–21.  Defendants disagree.  Dkt. No. 57-4 ("Defs.' Reply") at 19–20 (arguing that there is no evidence "that [plaintiff] cut his FMLA leave use short or did not take FMLA leave because of the [Restriction]").

The Court agrees with defendants.  To be sure, plaintiff did testify that "there were times" when he "begged [his husband] to handle himself and see if he can get through the day so that [plaintiff] could go to class" and, on those days, plaintiff did not use FMLA leave.  Pl.'s Dep. at 50.  But at the summary judgment stage, uncorroborated speculation cannot create a genuine dispute of material fact for the jury, and plaintiff has not identified a single day when he would have exercised his FMLA rights, but did not, because of the Restriction.  *See generally* Pl.'s Add'l SMF.  On the contrary, plaintiff testified that he *did* take FMLA leave on any day when his husband needed him to provide care—notwithstanding the Restriction.  *Id.* ("Q. . . . [B]ut if— if you did need to take care of [your husband] you did use FMLA? A. Correct . . . If it was

absolutely necessary."). In sum, plaintiff has failed to point to sufficient evidence from which a rational factfinder could infer that defendants actually denied or dissuaded him from exercising his FMLA rights by imposing the Restriction.

Relatedly, plaintiff argues that, if he had known that the Restriction was unlawful, he would have "structured" his FMLA leave usage and his enrollment decisions differently. Pl.'s Opp. at 20–21. Defendants disagree. Defs.' Reply at 19 ("[I]t is unclear how he would have structured his enrollment decisions and leave usage differently in the absence of the [Restriction].").

As for leave usage, the record evidence is insufficient to create an inference that the Restriction played any role in the way that plaintiff structured his leave: Plaintiff was granted intermittent FMLA leave to care for his husband, who suffered from episodes of anxiety and depression. Defs.' SMF ¶ 13. As plaintiff explained, "these episodes were unpredictable, meaning [that] [p]laintiff could not know in advance which specific days . . . would require FMLA leave." Pl.'s Resp. SMF ¶ 15. Because of the undisputedly sporadic and unpredictable nature of plaintiff's husband's condition, there is no indication in the record that plaintiff had any ability to "structure" his leave in the first place. Consequently, no rational jury could conclude, based on the record evidence, that the Restriction had any impact on the way plaintiff "structured" his FMLA leave usage.

The same conclusion applies with respect to plaintiff's enrollment decisions. Plaintiff acknowledges that, as an employee, he could take up to six credits per semester using the RTB. Pl.'s Resp. SMF ¶ 24. During the 2022 spring semester, plaintiff used the RTB to take five credit hours of coursework. Melvin Decl., Ex. C, Dkt. No. 49-20 (reflecting plaintiff's four-credit pre-calculus class and one-credit yoga class). Plaintiff neither argued, nor offered any

evidence from which a reasonable jury could conclude, that the Restriction impacted his 2022 spring enrollment decisions.[5]

Finally, plaintiff argues that he was denied educational benefits as a consequence of the Restriction. Pl.'s Opp. at 21–22. In reply, defendants argue that, at most, plaintiff missed one yoga class because of the Restriction, and he did not suffer a compensable loss as a result. Defs.' Reply at 17–18.

The Court agrees with defendants' assessment. Although plaintiff initially claimed that he missed three pre-calculus classes, three yoga classes, and seven tutoring sessions because of the Restriction, *see* Compl. ¶ 31, with discovery complete, plaintiff has only identified sufficient evidence from which a rational factfinder could conclude that the plaintiff missed one yoga class, on March 29, 2022, because of the Restriction.

For one, plaintiff testified that he could not attend class while he was caring for his husband, *see* Pl.'s Dep. at 34 ("And if. . . you're with [your husband] during one of his episodes and you're needed . . . to care for him, you agree that you would not be able to attend, let's say, pre-calculus class, right? A. Correct."), and the undisputed evidence indicates that plaintiff was caring for his husband during the three pre-calculus classes that he initially claimed to have missed because of the Restriction, *see* Pl.'s Dep. at 47 (conceding that he would have missed his pre-calculus class on February 7th, 2022, to care for his husband regardless of the Restriction); Pl.'s Resp. SMF ¶¶ 44 (conceding that he used FMLA during his entire shift on March 10, 2022), 45 (same as to March 23, 2022).

---

[5] Plaintiff's briefing suggests that, if anything complicated plaintiff's enrollment decisions, it was not the Restriction, but the unpredictability of his husband's condition. Pl.'s Opp. at 20. ("At enrollment in December 2021, Plaintiff could not know which days during Spring 2022 would require FMLA leave to care for his husband."). Indeed, the record evidence demonstrates that plaintiff missed his pre-calculus class on at least three occasions to care for his husband. See Pl.'s Dep. at 47 (conceding that he would have missed his pre-calculus class on February 7th, 2022, to care for his husband regardless of the Restriction); *see also* Pl.'s Resp. SMF ¶¶ 44–45.

Additionally, plaintiff concedes that two of his three absences from yoga were not attributable to the Restriction. Pl.'s Resp. SMF ¶¶ 48 (admitting that plaintiff did not miss yoga on March 10, 2022, because the course did not start until March 22, 2022), 49 (admitting that plaintiff's March 22, 2022, absence was unrelated to the Restriction), *see also* Pl.'s Opp. at 16, 22 (noting that plaintiff's missed yoga class on March 29, 2022, was "the most concrete manifestation of the ongoing interference").

Lastly, plaintiff offers only speculation to support his contention that he missed tutoring sessions because of the Restriction. *See* Pl.'s Dep. at 35 ("Q. . . . So, as of April 6th, 2022, . . . you missed two pre-calc and two yoga classes as a result of the stipulation, right? A. It may have been more than that. It may have been tutoring sessions too. I'm not sure."), 48 ("Q. Okay. So, you never[,]even in the days that you had not used any sick or F.M.L.A. leave, [went] to tutoring? A. Correct . . . Q. Okay. How often was tutoring held, as far as, you know? A. I don't recall.").

In all, the record evidence could only support a reasonable inference that plaintiff missed his yoga class on March 29, 2022, due to the Restriction. *See* Defs.' SMF ¶ 53 ("At best, . . . [plaintiff] missed his yoga class on March 29, 2022[,] because of the [Restriction].").

That conclusion, however, does not end the inquiry. Defendants argue that, even though plaintiff missed a yoga class because of the Restriction, he has no remedy under the FMLA for that absence. Defs.' Reply at 17. Throughout their briefing, defendants place considerable emphasis on the fact that plaintiff missed just one yoga class. *See* Defs.' Mem. at 8 ("This lawsuit is about [p]laintiff missing a single day of class in a yoga course. . ."), 21 ("At best, . . . [p]laintiff missed one yoga class because of the [Restriction]."), 24 ("[H]e only missed one class[.]").

- 15 -

But the apparent insignificance of plaintiff's alleged harm does not, by itself, defeat his FMLA claims.  Indeed, as the Second Circuit has pointed out, "FMLA claims are often small-ticket items, and small damages awards should be expected without raising the inference that the victory was technical or de minimis."  *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 168 (2d. Cir. 2011).

Nevertheless, plaintiff must still demonstrate that the harm he suffered is among those contemplated by the FMLA's "comprehensive remedial mechanism."  *Ragsdale*, 535 U.S. at 89.  Under §2617 an "employer is liable only for compensation and benefits lost 'by reason of the violation,' § 2617(a)(1)(A)(i)(I), for other monetary losses sustained 'as a direct result of the violation,' § 2617(a)(1)(A)(i)(II), and for 'appropriate' equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B)."  *Id.*

The Court agrees with defendants that plaintiff has not demonstrated that the missed yoga class caused him to incur any monetary losses for which he could recover damages under the FMLA.  The RTB granted plaintiff the ability to take six credit hours of coursework with fully remitted tuition during the 2022 spring semester.  Defs.' SMF ¶ 24.  Plaintiff received an "A" in his 1-credit yoga class and, thus, obtained the full monetary value of that credit hour.  Defs.' SMF ¶ 69; Melvin Decl., Ex. D, Dkt. No. 49-21 at 1.  Absent evidence that plaintiff was denied the monetary value of the RTB, he is not entitled to damages under the FMLA.  Plaintiff has also failed to demonstrate that he is entitled to equitable relief, (*e.g.*, employment, reinstatement, promotion), because he does not claim that he was terminated or demoted because of the

Restriction.[6]  *See* Pl.'s Resp. SMF ¶ 78 (admitting that plaintiff was promoted to a higher-paying position on June 16, 2022).

In all, plaintiff has not adduced sufficient evidence from which a reasonable jury could conclude that he suffered a compensable injury under the FMLA.  Accordingly, plaintiff's FMLA claims must be dismissed as a matter of law.

### 2.  Retaliation

In addition to the foregoing reasons, defendants are entitled to summary judgment on plaintiff's FMLA retaliation claim on another, independent ground—namely, plaintiff's failure to offer sufficient evidence to establish an essential element of his retaliation claim.

To make out a prima facie case of retaliation, a plaintiff must show that: "1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza v. City of N.Y.*, 365 F.3d 165, 168 (2d Cir. 2004).  Though defendants do not directly attack plaintiff's prima facie case, a cursory review of the record casts doubt on the sufficiency of the evidence underlying the third element—*i.e.*, that plaintiff suffered an adverse employment action.

---

[6] Plaintiff's prayer for relief includes a request for a declaratory judgment, Compl. at p. 20, but that request must be denied.  Declaratory judgments are a form of prospective relief. *L.A. Cnty., Cal. v. Humphries*, 562 U.S. 29, 31 (2010).  To obtain prospective relief, a plaintiff "must show, *inter alia,* a sufficient likelihood that he [or she] will again be wronged in a similar way." *Marcavage v. City of N.Y.*, 689 F.3d 98, 103 (2d Cir. 2012) (internal quotation omitted).  For reasons explained *infra*, plaintiff has not established a sufficient likelihood that he will be harmed by the Restriction in the future. *See infra* Point IV.B.1.  Consequently, plaintiff is not entitled to the declaratory relief he seeks.

In *Millea*, the Second Circuit held that the *Burlington Northern*[7] materiality standard for adverse employment action, originally developed in the Title VII context, also applies to FMLA retaliation claims. *Millea*, 658 F.3d at 164. To meet that standard, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations omitted). As the Second Circuit has explained:

> An adverse employment action must be more disruptive than a mere inconvenience or an alteration of job responsibilities and might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.

*Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71–72 (2d Cir. 2019).

An adverse employment action causing only temporary disruption or minor inconvenience will ordinarily fall short of "materially adverse." *See Carvalho v. Associated Brands Inc.*, 707 F. App'x 742, 744–45 (2d Cir. 2017) (summary order) (holding that temporary mistaken designation of plaintiff's medical leave absence as unexcused was not materially adverse where the error was corrected after plaintiff complained); *Mazzeo v. Mnuchin,* 2017 WL 2817083, at *6 (S.D.N.Y. June 29, 2017) (finding that a restriction on the use of work vehicles while on leave "certainly d[id] not amount to a 'material adverse change' in the terms and conditions of [plaintiff]'s employment"), *aff'd*, 751 F. App'x 13 (2d Cir. 2018) (summary order); *Knox v. Town of S.E.*, 2014 WL 1285654, at *10 (S.D.N.Y. Mar. 31, 2014) (holding a change in

---

[7] In *Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346 (2024), the Supreme Court held that plaintiffs do not need to show that an alleged adverse employment action was material to sustain a Title VII discrimination claim. *Id.* at 355–58. This holding does not impact the analysis of plaintiff's FMLA retaliation claim, because the Court in *Muldrow* preserved the *Burlington Northern* standard in the retaliation context. *See id.* at 357 (noting that the *Burlington Northern* Court "adopted the standard for reasons peculiar to the retaliation context" and finding that "no such . . . reasoning is applicable to the discrimination bar").

policy that prohibited plaintiff from keeping his work vehicle overnight was not materially adverse where there was evidence that plaintiff "was the *only* employee . . . to ever have been granted the convenience of keeping the car at his home overnight" ) (emphasis in original), *aff'd*, 599 F. App'x 411 (2d Cir. 2015) (summary order).

Plaintiff suffered, at most, a temporary interruption in his use of the RTB due to the Restriction.  The Restriction was imposed on December 20, 2021, and became effective when the spring semester started in January 2022.  Defs.' SMF ¶¶ 33–34, 38.  On March 21, 2022, plaintiff requested to meet with Bottari regarding the Restriction.  Pl.'s Resp. SMF ¶ 58.  Ten days later, plaintiff met with Bottari, who advised plaintiff that she was removing the Restriction effective that day.  *Id.* ¶ 62.  On April 4, 2022, Bottari confirmed that the Restriction had been rescinded.  *Id.* ¶ 63.

Prior to its recission, plaintiff missed one yoga class, on March 29, 2022, because of the Restriction.  Defs.' SMF ¶ 53.  That absence was excused by plaintiff's instructor, and plaintiff received full credit and an "A" in the course.  *Id.* ¶¶ 53, 69.  The Restriction has never been re-implemented, and plaintiff has utilized the RTB in subsequent semesters without issue.  *Id.* ¶¶ 70–71, 73.

To be sure, "the significance of any given act of retaliation will often depend upon the particular circumstances," *Burlington Northern*, 548 U.S. at 69, but plaintiff has not adduced sufficient evidence from which a rational factfinder could conclude that the Restriction's temporary and partial restriction on class attendance amounted to a "significant" harm.  And although plaintiff's burden at the prima facie stage is minimal, *see Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 151 (2d Cir. 2012), summary judgment is appropriate where the record evidence cannot support a reasonable inference that the plaintiff suffered a materially

adverse employment action.  *See Jimenez v. Donahoe*, 968 F. Supp. 2d 609, 621 (S.D.N.Y. 2013)

(granting summary judgment in favor of employer where alleged adverse employment action

was "not the sort of extraordinary event that could fairly be characterized as a materially adverse

employment action.") ; *Sotomayor v. City of N.Y.*, 862 F. Supp. 2d 226, 263 (E.D.N.Y. 2012)

(same), *aff'd*, 713 F.3d 163 (2d Cir. 2013); *Lawson v. Homenuk*, 710 F. App'x 460, 463 (2d Cir.

2017) (summary order) (affirming summary judgment where employee failed to adduce evidence

admitting an inference that she experienced the sort of adverse employment action necessary to

establish *prima facie* discrimination or retaliation).

In sum, because plaintiff has not offered sufficient evidence from which a rational

factfinder could conclude that Grzymala's implementation of the Restriction was a materially

adverse employment action, his FMLA retaliation claim must be dismissed.

## B.  ADA Associational Discrimination

Plaintiff claims that defendants discriminated against him, in violation of the ADA, by

imposing the Restriction against him based on his association with his husband, who has a

disability.  Pl.'s Opp. at 28.

"[T]he ADA's 'first three titles proscribe discrimination against individuals with

disabilities in employment and hiring (Title I), access to public services (Title II), and public

accommodations (Title III).'"  *Noel v. N.Y.C. Taxi & Limousine Comm'n*, 687 F.3d 63, 68 (2d

Cir. 2012) (quoting *Henrietta D. v. Bloomberg,* 331 F.3d 261, 273 (2d Cir. 2003)).  Title II of the

ADA prohibits discrimination by public entities and is, thus, inapplicable to plaintiff's claims

against the University.  *See* Def.'s SMF ¶ 1 ("[The University] . . . is a private university"); *see*

*also Cain v. Mercy Coll.*, 2022 WL 779311, at *2 (2d Cir. Mar. 15, 2022) (summary order)

("[Plaintiff] cannot state a claim under Title II of the ADA because Mercy College is a private college, not a public entity.").

Individuals who do not have a disability can bring claims under Titles I and III of the ADA for discrimination based on their association with an individual who has a qualifying disability. *See Stanley v. City of Sanford, Fla.*, 606 U.S. 46, 62 n.4 (2025) (noting that "Title I defines discrimination . . . to include . . . discriminating against a qualified individual 'because of the known disability of an individual with whom the qualified individual is known to have a relationship or association.'" (quoting 42 U.S.C. § 12112(b)(4))); 42 U.S.C. § 12182 ("It shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.").

Plaintiff's complaint alleges that defendants violated Title III of the ADA by imposing the Restriction against him. Compl. ¶¶ 101–06. Throughout the litigation, the parties have analyzed plaintiff's ADA claim consistent with that framing.[8] *See* Dkt. Nos. 8-1, 12, Defs.' Mem., Pl.'s Opp. But plaintiff is an employee of the University, Compl. ¶¶ 7, 10, and he claims that, in "December 2021, [the] University put a Stipulation on [plaintiff] with respect to his use of a fringe benefit of remitted tuition," *id.* ¶ 24.

In light of these allegations, plaintiff's claim would be more properly brought under Title I of "[t]he ADA[,] [which] prohibits 'excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified

---

[8] Defendants discussed Title I in a footnote of their briefing on their earlier motion to dismiss, *see* Dkt. No. 8-1 at 20 n.3, but only to say that plaintiff could not sustain a Title I claim based on the alleged conduct because it would be time-barred and he has failed to exhaust his administrative remedies.

individual is known to have a relationship or association.'" *Kelleher v. Fred A. Cook, Inc.*, 939 F.3d 465, 467 (2d Cir. 2019) (quoting 42 U.S.C. § 12112(b)(4)).

Title I of the ADA incorporates the administrative exhaustion requirements from Title VII of the Civil Rights Act of 1964. *McInerney v. Rensselaer Polytechnic Inst.*, 505 F.3d 135, 138 (2d Cir. 2007). Consequently, a plaintiff must file an EEOC charge within 180 days of the alleged discrimination, or within 300 days if the plaintiff has already filed a charge with the state or local employment agency, before bringing a claim under Title I of the ADA. 42 U.S.C. § 12117(a) (adopting the filing requirements of 42 U.S.C. § 2000e–5 for Title I ADA claims). Plaintiff has failed to do so. Bottari removed the Restriction by April 4, 2022, at the latest, Pl.'s Resp. SMF ¶ 64, and as of plaintiff's deposition on April 30, 2025, he had not filed a charge with the EEOC. *See* Pl.'s Dep. at 1, 26–28. Accordingly, plaintiff cannot sustain an ADA claim pursuant to Title I.

That leaves Title III as the only conceivable basis for plaintiff's disability discrimination claim. Title III of the ADA prohibits "discrimination against an individual 'on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases . . . or operates a place of public accommodation.'" *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94 (2d Cir. 2012) (quoting 42 U.S.C. § 12182(a)).

The University, as a private university and education corporation, is a place of public accommodation under Title III. Defs.' SMF ¶ 1; *See* 42 U.S.C. § 12181(7)(J) (defining public accommodation to include "undergraduate, or postgraduate private school, or other place of education").

But courts have been skeptical of the argument that an employment-related disability discrimination claim implicates Title III simply because an employer meets the definition of a place of public accommodation under Title III.  *See Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 n.8 (2d Cir. 1999) ("While . . . an insurance office[,] in its dealings with the public[,] is a 'place of public accommodation' and is regulated by Title III, it does not necessarily follow that Title III is implicated when an insurance company issues a disability policy to an employer for the benefit of its employees."); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1010 (6th Cir. 1997) (holding that "[a] benefit plan offered by an employer is not a good offered by a place of public accommodation" because "the statutory framework of the ADA expressly limits discrimination in employment practices to Title I of the ADA"), *cert. denied*, 522 U.S. 1084 (1998); *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 612 (3d Cir. 1998) ("Terms and conditions of employment are covered under Title I, not Title III.").

This skepticism is consistent with the legislative history of Title III, which provides that: "Title III is not intended to govern any terms or conditions of employment by providers of public accommodations . . . [E]mployment practices are governed by [T]itle I of this legislation."  H.R. Rep. No. 101-485, pt. 2, at 99 (1990); *see also Menkowitz v. Pottstown Meml. Med. Ctr.*, 154 F.3d 113, 118–19 (3d Cir. 1998) ("[I]t is evident that Congress sought to regulate disability discrimination in the area of employment exclusively through Title I, notwithstanding the broad language of Title III.").

There is no evidence in the record to suggest that the Restriction is anything other than a limitation on a term or condition of plaintiff's employment.  But setting that aside and assuming, for the sake of the argument, that plaintiff's claim is cognizable under Title III of the ADA,

defendants argue that it fails as a matter of law, in part, because plaintiff lacks standing.  Defs.'

Mem. at 37–39.  Plaintiff disagrees.  Pl.'s Opp. at 26–29.

### 1. Standing

Defendants argue that plaintiff lacked standing to bring this action at the time it was filed,

because defendants voluntarily rescinded the Restriction by April 4, 2022, at the latest.  Defs.'

Mem. at 37–38.  Plaintiff disagrees, arguing that a jury could reasonably infer that defendants'

discriminatory treatment of him will continue because defendants "conducted no investigation

into whether the . . . [R]estriction was discriminatory, provided no . . . training to . . . Grzymala,

[and] implemented no policy changes to prevent recurrence."  Pl.'s Opp. at 12.

"A private individual may only obtain injunctive relief for violations of a right granted

under Title III; he cannot recover damages."  *Powell v. Natl. Bd. of Med. Examiners*, 364 F.3d

79, 86 (2d Cir. 2004).  To obtain "injunctive relief, a plaintiff must show the three familiar

elements of standing: injury in fact, causation, and redressability."  *Cacchillo v. Insmed, Inc.*,

638 F.3d 401, 404 (2d Cir. 2011).  The Second Circuit has held that a Title III plaintiff can

establish the injury in fact element by demonstrating that:

> (1) the plaintiff [suffered] a past injury under the ADA; (2) it [i]s reasonable to infer
> that the discriminatory treatment [will] continue; and (3) it [i]s reasonable to infer,
> based on the past frequency of plaintiff's visits and the proximity of defendants'
> [public accommodation] to plaintiff's home, that plaintiff intend[s] to return to the
> subject location.

*Calcano v. Swarovski N.A. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022) (internal quotation omitted).

Defendants argue that the record evidence does not support a reasonable inference that

the allegedly discriminatory treatment will continue, because defendants rescinded the

Restriction, and the record is devoid of any evidence from which a rational factfinder could infer

that the Restriction would be reimposed against plaintiff in the future.  Defs.' Mem. at 38.

- 24 -

"[A]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), but on summary judgment, a "plaintiff can no longer rest on such 'mere allegations,'" and "must 'set forth' by affidavit or other evidence 'specific facts'" to demonstrate that the plaintiff suffered an injury in fact, *id.* (quoting Fed. R. Civ. P. 56(e)).

Instead of pointing to specific facts that satisfy the injury-in-fact requirement, plaintiff attempts to recast the burden on defendants—stating that defendants bear a "heavy burden to show it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Pl.'s Opp. at 26 (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953); *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022)) (internal quotation marks omitted).[9] This misunderstands defendants' argument. The standard described in *United States v. W.T. Grant Co.* applies to questions of mootness, which is a related but distinct inquiry from standing. As the Supreme Court has explained:

> [A] defendant claiming that its voluntary compliance moots a case bears a formidable burden. By contrast, it is the plaintiff's burden, in a lawsuit brought to force compliance, to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue and that the threatened injury is certainly impending.

---

[9] Plaintiff attributes a significant portion of the quoted language to *United States v. W.T. Grant Co.*, but much of the purported sub-quote is absent from that decision. The same is true with respect to *Calcano*, which plaintiff co-cites. Plaintiff's misattributed quote is particularly troubling in light of growing concerns over the use (and misuse) of generative artificial intelligence ("AI") tools in legal drafting. *See Hall v. Acad. Charter Sch.*, 2025 WL 2256653, at *4 (E.D.N.Y. Aug. 7, 2025) ("Regrettably, the number and regularity with which courts have been faced with hallucinations in court filings continues to rise both in this country and abroad.").

As officers of the court, attorneys "are bound to exercise professional judgment and responsibility, and to comply with the Federal Rules of Civil Procedure." *Park v. Kim*, 91 F.4th 610, 614 (2d Cir. 2024). Regardless of whether the misquoted language was the product of generative AI, the Court reminds plaintiff's counsel of the duties imposed by Rule 11 of the Federal Rules of Civil Procedure which, "[a]t the very least, . . . require that attorneys read, and thereby confirm the existence and validity of, the legal authorities on which they rely." *Id.* at 615.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000).  As a result of this distinction, "there are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness."  *Id.*

Defendants argue that plaintiff's claim of future injury is too speculative to confer standing because the Restriction was rescinded, it has never been re-implemented, and plaintiff has not registered to take classes in the future.  Defs.' Opp. at 37–38.

To establish a future injury that is concrete enough to confer standing, a plaintiff must demonstrate "a sufficient likelihood that he will again be wronged in a similar way."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

Plaintiff contends that there is a sufficient likelihood that the Restriction will be re-imposed against him in the future because he remains employed with the University, and he "could enroll in future courses."  Pl.'s Opp. at 27.  In support of that contention, plaintiff cites to the fact that, "[o]n June 16, 2022, [p]laintiff received a new position at the University as a laborer, for which he received a pay increase from his position as custodian."  Defs.' SMF ¶ 78.

This is not enough.  Although plaintiff remains employed with the University and could hypothetically re-enroll in courses, plaintiff has not expressed any intention to do so.  In fact, plaintiff testified that: "it's come to the point where [he] do[es]n't even want to register for classes at [the] University anymore."  Pl.'s Dep. at 49.  Absent any affirmative indication that plaintiff plans to take courses in the future, the record could not support a reasonable inference that *plaintiff* faces a real and immediate threat of injury in the future.

Plaintiff also argues that "[w]ithout training or policy changes, nothing prevents recurrence."  Pl.'s Opp. at 27.  The Supreme Court addressed a similar argument in *City of Los*

*Angeles v. Lyons*, 461 U.S. 95, 98 (1983). In that case, Lyons sought declaratory and injunctive relief against the Los Angeles police department, claiming that he had been subject to an unlawful choke hold. *Id.* at 97–98. He argued that he faced the threat of being illegally restrained again in the future, because the Los Angeles police routinely applied unlawful choke holds. *Id.* at 109–11.

The Supreme Court held that Lyons lacked standing, because his allegations of future injury were too speculative. *Lyons*, 461 U.S. at 109–11. The Court suggested that Lyons could have established standing by demonstrating either: "(1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter . . . , [or] (2) that the City ordered or authorized police officers to act in such manner." *Id.* at 106 (emphasis in original).

Other than Grzymala, there is no evidence in the record that *any*, let alone all, University employees impose restrictions like that at issue here. *See* Pl.'s Opp. at 25 ("Only Plaintiff—the employee on FMLA leave to care for his disabled husband—was singled out."). Additionally, plaintiff has not cited any evidence suggesting that Grzymala ever imposed a similar restriction on any other employee.[10] Pl.'s Opp. at 25 ("Grzymala never imposed similar restrictions on any other employee despite 2-3 other tuition benefit users during her ten-year tenure."). Nor has plaintiff shown that the University ordered Grzymala to impose the Restriction, or that Grzymala imposed the Restriction pursuant to any University policy. Pl.'s Opp. at 31 ("She . . . imposed the . . . [R]estriction without consulting policy, HR, or anyone else . . . "). Finally, and perhaps most notably, plaintiff admits that he has used the RTB to take courses without incident since the Restriction's removal. Pl.'s Resp. SMF ¶¶ 70–71, 73.

---

[10] But even if he had, plaintiff admits that Grzymala retired on June 30, 2025, Pl.'s Resp. SMF ¶ 2, thereby mitigating any threat that she would re-impose the Restriction.

In all, plaintiff has failed to point to sufficient evidence from which a reasonable factfinder could infer that he faces a real and immediate threat of future harm as a result of the Restriction.[11]  Accordingly, defendants are entitled to summary judgment on plaintiff's disability discrimination claim.

### C.  Remaining State Law Claims

The Court has dismissed all of plaintiff's federal claims, *see* supra Point IV.A–B, leaving only his state law claims against defendants.  Defendants argue that "the Court should decline to exercise supplemental jurisdiction over [p]laintiff's state law claims."  Defs.' Mem. at 39.  Plaintiff takes no position on the issue.  *See generally,* Pl.'s Opp.

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . .—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013); *Chinniah v. Fed. Energy Regul. Comm'n*, 62 F.4th 700, 703 (2d Cir. 2023) (holding same); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").  *Marcus v. AT&T Corp.*,

---

[11] Plaintiff also claims that the Restriction has caused him ongoing psychological harm, even after its recission.  Pl.'s Opp. at 13, 19, 32; *see also* Pl.'s Dep. at 53 (testifying he would "be just as motivated as [he] ever was," "[he]'d probably be finished with [his] degree, and [he]'d probably have a better job by now" had the Restriction never been imposed).  But "'[p]ast wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy' with respect to potential future similar wrongs."  *Dorce v. City of N.Y.*, 2 F.4th 82, 96 (2d Cir. 2021) (quoting *Lyons*, 461 U.S. at 203).  Even the fact "[t]hat a past harm was severe or inflicts continuing damage does not change that rule: the remedy for continuing pain and suffering from a defendant's past damage is compensatory damages, as an injunction against future actions by a defendant does not remedy the harm done by that defendant's past acts."  *Dorce*, 2 F.4th at 96.  As noted *supra*, money damages are unavailable under Title III of the ADA.  *Powell*, 364 F.3d at 86.

138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

"There may, on the other hand, be situations in which the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong." *United Mine Workers of Am.*, 383 U.S. at 727. But no such policy implications are present, and courts routinely decline to exercise supplemental jurisdiction under similar circumstances. *See, e.g.*, *Tieu v. N.Y.C. Econ. Dev. Corp.*, 717 F. Supp. 3d 305, 331 (S.D.N.Y. 2024) (supplemental jurisdiction over NYSHRL and NYCHRL claims after granting summary judgment in favor of defendants on plaintiff's FMLA, Title VII, and ADA claims); *Sears-Barnett v. Syracuse Cmty. Health Ctr., Inc.*, 531 F. Supp. 3d 522 (N.D.N.Y. 2021); *Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599 (E.D.N.Y. 2017). Accordingly, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims and dismisses them without prejudice to renewal in state court.

## V. CONCLUSION

Therefore, it is

**ORDERED** that

1. Defendants' motion for summary judgment is **GRANTED** as to plaintiff's FMLA Interference claim, FMLA Retaliation claim, and ADA Associational Disability Discrimination claim; and

2. Plaintiff's remaining state law claims are **DISMISSED**, without prejudice to renewal in state court.

The Clerk of the Court is directed to:

   a. Terminate the pending motion (Dkt. No. 49);

b.  Enter a judgment accordingly, and close the file.

**IT IS SO ORDERED.**

Dated:  March 25, 2026
       Utica, New York.

Anthony J. Brindisi
U.S. District Judge